# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54443-1-II |
| Respondent, | |
| v. | |
| GREGORY JAMES BEALS, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Gregory Beals seriously assaulted his friend Laura Lee when he became convinced she had taken his phone. Beals locked Lee in a bedroom in his house, and held her there for several days. Lee made several unsuccessful attempts to escape. On discovering Lee had not taken his phone, he released her from the bedroom.

The jury convicted Beals of unlawful imprisonment and second degree assault.[1] Included in Beals' offender score at sentencing were two prior convictions for unlawful possession of a controlled substance. The trial court also imposed a community custody supervision fee.

On appeal, Beals challenges his unlawful imprisonment conviction, arguing that the evidence was insufficient to prove that he restrained the victim. He also argues that the State failed to prove his criminal history, that he is entitled to resentencing without his convictions for unlawful

---

[1] Beals' second degree assault conviction is not at issue in this appeal.

possession of a controlled substance impacting his offender score, and that the trial court erred by imposing a community custody supervision fee.

We hold that the evidence was sufficient to support Beals' conviction for unlawful imprisonment. We also hold that the trial court was permitted to impose the community custody supervision fee. However, the trial court erred in relying on the State's unproven assertion of Beals' criminal history, and must strike Beals' prior convictions for unlawful possession of a controlled substance from Beals' offender score. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

FACTS

Laura Dodson Lee and Beals were good friends. The day of the assault and imprisonment, Lee had gone over to Beals' house. While Lee was at Beals' home, Beals could not find his phone. Beals became extremely upset and blamed Lee, believing she had taken his phone. Beals repeatedly hit Lee and strangled her, which resulted in her losing consciousness.

Beals then locked Lee in a bedroom in his house. Lee tried escape out the bedroom window multiple times, but she could not open the window wide enough to get through. There were "some screws or something on" the window. Report of Proceedings (RP) at 147-48. Lee's phone had also gone missing, so she was unable to call for help. However, Lee screamed out for help.

Beals found his phone after a couple days, and then he let Lee out of the room. Beals suggested to Lee that they go out, and they went to the house of one of Beals' friends. When they arrived at the friend's house, Beals told Lee to wait in the vehicle. When Beals left, Lee ran into the woods and hid. After a few hours, Lee went to the friend's house to borrow a phone to call her daughter.

The State charged Beals with second degree assault and first degree kidnapping. Beals' case proceeded to a jury trial. At trial, Lee testified consistent with the facts above.

In response, Beals called a private investigator to testify about her investigation into the case. Two months after the assault and imprisonment, the investigator went to Beals' house. The investigator was able to open the window that Lee could not, and the investigator did not find anything that would have prevented the window from being fully opened.

The jury found Beals guilty of second degree assault and unlawful imprisonment, a lesser included offense of first degree kidnapping.

At sentencing, the State alleged that Beals' offender score was in excess of 9 points. Beals did not dispute his offender score, but neither did he affirmatively acknowledge the score. The court accepted the State's recitation of Beals' offender score and sentenced Beals accordingly.

Beals appeals his unlawful imprisonment conviction and his sentence.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Relying on his investigator's ability to open the bedroom window two months after he imprisoned Lee, Beals contends that the evidence is insufficient to support his conviction for unlawful imprisonment because Lee could have escaped, and thus she was not restrained. We disagree.

### A. LEGAL PRINCIPLES

The State has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When reviewing a challenge to the sufficiency of evidence, we ask "whether any rational fact finder could have found the elements

3

of the crime beyond a reasonable doubt." *Id.* at 105. A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences arising from that evidence. *Id.* at 106. Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). A reviewing court defers to the trier of fact on issues of "conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). We review a challenge to the sufficiency of the evidence de novo. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

To convict a defendant of unlawful imprisonment the State must prove that the defendant "knowingly restrain[ed] another person." RCW 9A.40.040. A defendant restrains another person if the defendant restricts that "person's movements without consent and without legal authority in a manner which interferes substantially with [the person's] liberty." RCW 9A.40.010(6).

B. ANALYSIS

Beals contends that Lee's movement was not restricted because she could have escaped from the bedroom window. Beals' argument in this respect relies entirely on the testimony of his investigator, who claimed that when she inspected the premises in the months following this incident, she was able to open the window. In other words, Beals asks us to reweigh the evidence and arrive at a different conclusion than the jury. This, we cannot do. *Thomas*, 150 Wn.2d at 874-75.

Taken in the light most favorable the State, and mindful that we cannot opine on the credibility of witnesses, the evidence shows that Beals locked Lee in a bedroom against her will and that she tried unsuccessfully to escape through a window. Despite trying multiple times, Lee was unable to open the window wide enough to escape. Lee believed that "some screws or

4

something" prevented her from opening the window. RP at 147-48. On this record the evidence was sufficient for a rational juror to conclude that Lee was restrained. Thus, evidence was sufficient to support Beals' conviction of unlawful imprisonment.

## II. OFFENDER SCORE

Beals argues that the State did not meet its burden of proving Beals' criminal history because the State did not present evidence of any prior convictions or show that his older convictions had not "wash[ed] out." Br. of Appellant at 13. Further, as Beals notes, he did not affirmatively acknowledge the State's assertion of his criminal history. Beals also contends that his two prior convictions for unlawful possession of a controlled substance must be removed from his offender score. The State concedes that it did not prove Beals' criminal history, and that Beals' prior convictions for unlawful possession of a controlled substance cannot be used in his offender score. We accept the State's concession, reverse Beals' sentence, and remand for resentencing.

A. LEGAL PRINCIPLES

### 1. Proof of Prior Convictions

The State bears the burden of proving the defendant's criminal history before the trial court can calculate the defendant's offender score. *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The burden of proof is by a preponderance of the evidence. *Id.* The State's unsupported summary of the defendant's criminal history does not satisfy this burden of proof. *Id.* at 910. Criminal defendants have no burden to either provide evidence of their criminal history or state objection or agreement with the State's calculation, unless the defendant was convicted pursuant to a plea agreement. *Id.* Additionally, the State cannot rely on the defendant's failure to object to its proposed offender score as a substitute for its obligation to prove the defendant's criminal

history. *Id.* at 912. The State is only relieved of its obligation to prove the defendant's criminal history when the defendant affirmatively acknowledges the prior convictions that form the basis of the offender score. *Id.*

The State must introduce at least some evidence to support its assertion of the defendant's criminal history. *Id.* at 910. Such evidence could include a certified copy of a judgment or other comparable documents or records. *Id.*; *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999).

*2. Blake Convictions*

In *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021), the supreme court held former RCW 69.50.4013 (2017), Washington's drug possession statute, is void because it violates state and federal due process clauses. When a conviction is based on an unconstitutional statute, that conviction cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986).

B. ANALYSIS

Here, the State, as it appropriately concedes, failed to meet its burden to prove Beals' criminal history. The State did not submit any evidence, beyond mere assertion, that supported the trial court's determination of Beals' criminal history and calculation of his offender score. At sentencing, the State alleged that Beals' offender score was "nine plus,"[2] but failed to articulate any previous crimes of which it alleged Beals had been convicted. RP at 315. Additionally, there is no record of Beals affirmatively acknowledging his criminal history. The convictions that were

---

[2] We take this opportunity to disapprove of the practice of noting a defendant's offender score as "9+." Clerk's Papers at 71. The offender score should be accurately recited in the judgment and sentence. If an offender score is, for example, 15, then the judgment and sentence should say "15," rather than "9+."

included on Beals' judgment and sentence, and used to calculate his offender score, were not proved by the State.

Moreover, included in the criminal history recitation on the judgment and sentence are two prior convictions for unlawful possession of a controlled substance. The State correctly concedes that Beals' prior convictions for unlawful possession of a controlled substance must be removed from his offender score.

Based on the State's failure to prove Beals' criminal history, as well as the trial court's reliance on Beals' prior convictions for unlawful possession of a controlled substance, we reverse Beals' sentence and remand for resentencing. At resentencing, the State will have the opportunity to prove Beals' offender score. *State v. Jones*, 182 Wn.2d 1, 10-11, 338 P.3d 278 (2014). The trial court is precluded, however, from including Beals' prior unlawful possession of a controlled substance convictions in its offender score calculation. *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021).

III. COMMUNITY CUSTODY SUPERVISION FEE

Beals argues that the community custody supervision fee must be stricken because he is indigent and the community custody supervision fee is a discretionary LFO. The State responds that the court did not err because the community custody supervision fee, while discretionary, is not a cost under RCW 10.01.160. We agree with the State. However, we note the court may reconsider this fee on remand.

Under RCW 10.01.160(3) a trial court shall not order a defendant to pay *costs* if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). RCW 10.01.160(2) limits costs "to

expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."

Beals' community custody supervision fee was imposed under RCW 9.94A.703(2)(d), which states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections (DOC)]." The community custody supervision fee is a discretionary LFO. *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021).

Although community custody supervision fees are discretionary, the fees "do not meet the definition of a cost under RCW 10.01.160(2) because they are not an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision." *Id.* Because community custody supervision fees are not costs, the trial court was permitted to impose this fee, despite Beals' indigent status. *Id.*

In light of our decision remanding this matter to the trial court for resentencing, however, the trial court is permitted to reconsider the imposition of this fee on remand if it chooses to do so. "The barriers that LFOs impose on an offender's reintegration to society are well documented . . . and should not be imposed lightly merely because the legislature has not dictated that judges conduct the same inquiry required for discretionary costs." *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015).

CONCLUSION

The evidence is sufficient to support Beals' unlawful imprisonment conviction. However, we reverse Beals' sentence and remand for resentencing. On remand, the trial court must calculate Beals' offender score based solely on prior convictions proved by the State, and may not include

any prior convictions for unlawful possession of a controlled substance. The trial court may also exercise its discretion to revisit its imposition of the community custody supervision fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.